# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YORYI PEREZ,<br><br>        Petitioner,<br><br>   v.<br><br>M. ARVIZA,<br><br>        Respondent. | Case No. 1:23-cv-01341-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS, GRANT PETITIONER'S MOTION TO REITERATE JURISDICTION, AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF Nos. 10, 13)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

At the time the instant petition was filed, Petitioner was in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution in Mendota, California ("FCI Mendota"), serving his 78-month sentence after being convicted of conspiracy to transport and move an alien into the United States.[1] (ECF No. 1 at 1; ECF No. 10 at 2.[2]) At FCI Mendota,

---

[1] Petitioner has since been released from BOP custody. (ECF Nos. 13, 14.)
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

1  Petitioner was charged with possessing a hazardous tool, in violation of BOP Code 108, on April
2  23, 2023. (App. 4, 20–22.[3]) On May 23, 2023, the Disciplinary Hearing Officer ("DHO") held a
3  hearing and found Petitioner violated BOP Code 108. (App. 5, 12–13.)

   On September 11, 2023, Petitioner filed the instant petition for writ of habeas corpus, asserting the following claims for relief: (1) evidence does not support the DHO's findings; (2) lack of translation assistance at the DHO hearing; and (3) the BOP's misapplication of the DHO's sanction. (ECF No. 1.) Respondent filed a motion to dismiss the petition for nonexhaustion, but also argued that the petition should be denied on the merits. (ECF No. 10.) As Petitioner did not receive a copy of the motion to dismiss, (ECF No. 11), the Court mailed a copy of the motion to dismiss to Petitioner and granted him an extension of time to file a response, (ECF No. 12). Petitioner subsequently filed a motion to reiterate jurisdiction, arguing that this Court maintains subject-matter jurisdiction over the petition even when Petitioner is released from BOP custody. (ECF No. 13.) However, to date, Petitioner has not filed an opposition or statement of nonopposition to the motion to dismiss, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Mootness

The Court has "an independent duty to consider *sua sponte* whether a case is moot." Demery v. Arpaio, 378 F.3d 1020, 1025 (9th Cir. 2004) (citing Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999)). Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings," which "means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting

---

[3] "App." refers to the Appendix filed by Respondent. (ECF No. 10-1.) Appendix page numbers refer to the page numbers stamped at the bottom right corner.

2

1  Lewis, 494 U.S. at 477). Therefore, once a "convict's sentence has expired . . . some concrete
2  and continuing injury other than the now-ended incarceration or parole—some 'collateral
3  consequence' of the conviction—must exist if the suit is to be maintained." Spencer, 523 U.S. at
4  7. Courts "have been willing to presume that a wrongful criminal conviction has continuing
5  collateral consequences," id. at 8, but the Ninth Circuit has "decline[d] to apply the presumption
6  of collateral consequences to prison disciplinary proceedings," Wilson v. Terhune, 319 F.3d 477,
7  481 (9th Cir. 2003).

8  In Nonnette v. Small, 316 F.3d 872 (9th Cir. 2002), a prisoner brought a civil rights
9  action pursuant to 42 U.S.C. § 1983 challenging a disciplinary proceeding that resulted in the
10 revocation of 360 days of good-time credits and 100 days of administrative segregation. The
11 district court held that Heck v. Humphrey, 512 U.S. 477 (1994), precluded the prisoner from
12 maintaining his § 1983 action because his claims necessarily challenged the validity of the
13 disciplinary proceeding, which had not been set aside. Nonnette, 316 F.3d at 874. At the time of
14 the appeal, Nonnette had been released from incarceration and was on parole. Because no
15 collateral consequences attended Nonnette's deprivation of good-time credits, the Ninth Circuit
16 found "that if he now filed a petition for habeas corpus attacking the revocation of his good-time
17 credits and the imposition of administrative segregation . . . , his petition would have to be
18 dismissed for lack of a case or controversy because he has fully served the period of
19 incarceration that he is attacking." Nonnette, 316 F.3d at 876. The Ninth Circuit therefore
20 concluded that "in these circumstances, a § 1983 claim may be maintained." Id.

21 Here, Petitioner asserts that because "the BOP has arbitrarily taken 82 days of his good
22 conduct time a judgment [in] his favor would entitl[e] him to a reduction of his supervise[d]
23 release." (ECF No. 13 at 1.) Petitioner argues that the Court still maintains jurisdiction over the
24 petition despite his release from custody, citing to Allen v. Ives, 950 F.3d 1184 (9th Cir. 2020).
25 In Allen, the petitioner filed a § 2241 petition, asserting that he was actually innocent of his
26 sentence as a career offender. Id. at 1186. After the Ninth Circuit heard oral argument, the
27 sentencing court reduced Allen's sentence to time served, ordered his immediate release, and
28 reduced his period of supervised release to four years. Id. at 1187. The Ninth Circuit found that

1  the appeal was not moot because "[i]f we hold that the district court in Oregon had jurisdiction
2  over Allen's § 2241 petition, and if Allen is held to be actually innocent of having been a career
3  offender, there is a nontrivial possibility that the district court in Connecticut will reduce his term
4  of supervised release under § 3583(e)."[4] Allen, 950 F.3d at 1187. Allen, in turn, cited to Mujahid
5  v. Daniels, 413 F.3d 991, 995 (9th Cir. 2005), and United States v. D.M., 869 F.3d 1133, 1137
6  (9th Cir. 2017). In Mujahid, the petition challenged the BOP's "interpretation of the maximum
7  good time credit a federal prisoner can receive under 18 U.S.C. § 3624(b)." 413 F.3d at 993. In
8  finding the petition was not moot, the Ninth Circuit relied on precedent holding that "[t]he
9  'possibility' that the sentencing court would use its discretion to reduce a term of supervised
10 release under 18 U.S.C. § 3583(e)(2) was enough to prevent the petition from being moot." Id. at
11 995 (citing Gunderson v. Hood, 268 F.3d 1149, 1153 (9th Cir. 2001)). In D.M., the defendant
12 appealed the denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). D.M.,
13 869 F.3d at 1135. Although D.M. had been released from prison, he had been sentenced to five
14 years of supervised release, and the Ninth Circuit found that "the appeal is not moot because the
15 district court may modify D.M.'s term of supervised release." Id. at 1137.

16      The Court notes that Allen, Mujahid, and D.M. are distinguishable from the instant
17 matter because the petitioners in those cases were not challenging the length of their sentences
18 based on the loss of credits revoked through a disciplinary proceeding. Although Nonnette found
19 that no collateral consequences attended the petitioner's deprivation of credits revoked through a
20 disciplinary proceeding after he was released from incarceration and on parole, Nonnette is
21 distinguishable because it involved a state prisoner who was not subject to a period of supervised
22 release that could be modified pursuant to 18 U.S.C. § 3583(e). The Court finds that the instant
23 matter is more akin to Allen, Mujahid, and D.M. given that Petitioner is subject to a period of
24 supervised release, and "[t]he 'possibility' that the sentencing court would use its discretion to
25 reduce a term of supervised release under 18 U.S.C. § 3583(e)(2) [i]s enough to
26 ///

---

[4] "18 U.S.C. § 3583(e) authorizes a district court to terminate the period of supervised release after one year 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" Allen, 950 F.3d at 1187.

4

prevent the petition from being moot." Mujahid, 413 F.3d at 995. Accordingly, the Court should grant Petitioner's motion to reiterate jurisdiction.

**B. Exhaustion**

Respondent argues that the petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 10 at 3.) Petitioner contends that the Court should deem he exhausted administrative remedies because he submitted his appeal on the appropriate form and never received any response or notification. (ECF No. 1 at 9.)

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived if pursuing administrative remedies would be futile. Id. There is a two-level review process for appeals of DHO disciplinary proceedings. DHO appeals are submitted initially to the Regional Director using a BP–10 form. 28 C.F.R. §§ 542.14(d)(2), 542.15(a). "The inmate may appeal an adverse decision by the Regional Director to the Central Office (also called the General Counsel) of the BOP using a BP–11 form. The BP–11 must be submitted to the Central Office within 30 calendar days from the date of the Regional Director's decision." Nunez v. Duncan, 591 F.3d 1217, 1219–20 (9th Cir. 2010) (citing 28 C.F.R. § 542.15(a)).

The record before the Court reflects that Petitioner filed an appeal at the Regional Level, Regional Administrative Remedy Appeal 1169992-R1, that was denied on August 22, 2023. (App. 26.) Petitioner filed an appeal to the Central Office, dated September 20, 2023, that was denied on October 16, 2023. (App. 27–28.) The Court recognizes that Petitioner exhausted his administrative remedies after filing the instant petition. However, given that Petitioner has in fact exhausted his administrative remedies and Respondent has addressed the merits of the petition, the Court finds that judicial economy will be better served by adjudicating Petitioner's claims on the merits. Accordingly, the Court recommends that the motion to dismiss the petition for nonexhaustion be denied.

///

**C. Merits Analysis**

    1.  Due Process Protections in Prison Disciplinary Proceedings

"The Supreme Court established in Wolff v. McDonnell that there are procedural due process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding prior to being deprived of a protected liberty interest." Melnik v. Dzurenda, 14 F.4th 981, 985 (9th Cir. 2021). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563–71.

In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455–56.

    2.  Some Evidence

In his first claim for relief, Petitioner asserts that the evidence does not support the DHO's findings. Specifically, Petitioner argues that the incident report states that the USB charging cable was found in cell 227 while Petitioner was assigned to cell 224, and the DHO erroneously concluded that Petitioner was assigned to cell 227. Petitioner also argues that the

1  USB charging cable does not meet the elements required for a violation of disciplinary code
2  section 108. (ECF No. 1 at 5.)

3  With respect to Petitioner's assertion that he was assigned to cell 224 and the DHO
4  erroneously concluded that Petitioner was assigned to cell 227 where the charging cable was
5  found, the Court finds that Petitioner's assertion is mistaken. BOP records reflect that at the time
6  of the incident, Petitioner was assigned to cell 227. (App. 29.) Although the incident report states
7  that the USB charging cable was found in cell 227 and Petitioner was assigned to cell 224, this
8  appears to be a clerical error. With respect to Petitioner's assertion that a USB charging cable
9  does not meet the elements required for a violation of BOP Code 108, the Court does not find
10 Petitioner's argument persuasive.  "[C]ourts have upheld an inmate's discipline under Code 108
11 for possession of a cell phone and/or a cell phone charger[.]" Douglas v. Zickefoose, No. CIV.
12 11-406 JBS, 2012 WL 266364, at *15 (D.N.J. Jan. 27, 2012) (collecting cases). Accordingly,
13 habeas relief is not warranted on this ground.

14      3.   Lack of Translation Assistance

15 In his second claim for relief, Petitioner asserts that his due process rights were violated
16 because he does not understand or speak English and was not provided an interpreter at the
17 disciplinary hearing. (ECF No. 1 at 19–21.) It is unclear the extent to which due process may
18 require the assistance of an interpreter at a prison disciplinary proceeding. See Urmancheev v.
19 Ndoh, No. 1:21-cv-00255-JLT-HBK, 2023 WL 8478024, at *5 (E.D. Cal. Dec. 7, 2023),
20 findings and recommendations adopted, 2024 WL 1660740 (E.D. Cal. Apr. 17, 2024);
21 Encarnacion-Montero v. Sanders, No. LA CV 12-05262-VBF, 2014 WL 3751940, at *6 (C.D.
22 Cal. July 29, 2014). Even assuming due process so requires, Petitioner has not established that he
23 needed an interpreter. The DHO report reflected that the DHO "ensured the inmate understood
24 the due process rights and was prepared to proceed with the disciplinary hearing." (App. 4, 13.)
25 DHO Omar Gonzalez also declared:

> Nothing in my report indicates that I had any questions about Petitioner's ability to understand my questions or any other aspect of the proceedings, or that Petitioner requested an interpreter at any point in the proceedings. Had Petitioner requested an interpreter, I speak fluent Spanish and would have conducted the entire DHO hearing in Spanish. It is my opinion based on my personal interaction

> with Petitioner as documented in my June 16, 2023, Report, that Petitioner understood enough English to be able to proceed with the hearing in a meaningful fashion.

(App. 4.)

Additionally, as noted by Respondent, "there is no suggestion in the record from prior unit disciplinary proceedings that Petitioner expressed any inability to understand," Petitioner's Regional Administrative Remedy Appeal and Central Office Administrative Remedy Appeal are written in English without any statement that they were prepared with assistance of another person, and "Petitioner did not raise this fundamental error claim until his Central Office Administrative Remedy Appeal (BP11)," which raises questions about the credibility of Petitioner's claim that he cannot understand or speak English. (ECF No. 10 at 7.)

Upon review of the petition and the motion to reiterate jurisdiction, Petitioner demonstrates that he has a sufficient grasp of his claims and the legal issues involved and that he is able to clearly articulate those claims in English. There is no indication that the petition or motion were prepared with the assistance of another person. See Urmancheev, 2023 WL 8478024, at *5–6 (finding there was insufficient evidence prisoner needed an interpreter in disciplinary proceeding given that prisoner's "pleadings have articulated sophisticated legal concepts in good English and provide detailed descriptions of the prison legal proceedings at which he purportedly needed assistance" and thus inferring that prisoner "was adequately able to understand the applicable disciplinary proceedings and did not suffer a due process violation due to lack of assistance or translation").

Moreover, Petitioner does not demonstrate how he was prejudiced by the absence of an interpreter. See Felix v. Ayala, No. CV 18-3524-JLS (GJS), 2019 WL 2090707, at *4 (C.D. Cal. Jan. 29, 2019) ("Numerous federal courts have held that asserted constitutional errors in connection with disciplinary hearings are subject to harmless error review."), findings and recommendations accepted, 2019 WL 2089490 (C.D. Cal. May 10, 2019); Gabai v. Jacoby, 800 F. Supp. 1149, 1156 (S.D.N.Y. 1992) (holding that "the failure to provide plaintiff with a Hebrew interpreter at his [prison disciplinary] hearing in no way violated his rights under the Due Process Clause" in part because plaintiff did "not set forth how, if at all, he was prejudiced

by the denial of an interpreter"). The petition states:

> Had I been able to understand what was going on, I would have pointed out the obvious favorable facts: 1. That the USB cable was found in cell 227 while I was assigned to cell 224; 2. That a USB cable does not qualify as escape paraphernalia or an actual cell phone as the DHO erroneously concluded; 3. That the light fixture can only be open with a special tool that only staff members have access to it.

(ECF No. 1 at 21.) However, as noted in section II(C)(1), *supra*, (1) BOP records reflect that at the time of the incident, Petitioner was assigned to cell 227 and the incident report's reference was cell 224 was a clerical error; and (2) courts have upheld an inmate's discipline under Code 108 for possession of a cell phone charger. With respect to Petitioner's assertion that he would have pointed out that the light fixture could only be opened with a special tool accessible only to staff members, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. Accordingly, habeas relief is not warranted on this ground.

   4. DHO Bias

Petitioner claims that the DHO was biased, making a "decision without any regard of the truth or at least provid[ing Petitioner] with the opportunity to defend" himself. (ECF No. 1 at 19.) "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." Edwards v. Balisok, 520 U.S. 641, 647 (1997). To prevail on a claim of disciplinary hearing officer bias, a petitioner must show that the officer "present[ed] such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." Wolff, 418 U.S. at 570. The Court finds that Petitioner has not shown that the hearing officer presented such a hazard of arbitrary decisionmaking or dishonestly suppressed evidence of innocence. As set forth in section II(C)(2), *supra*, Petitioner's "favorable facts" that he alleges he would have raised had he purportedly understood what was going on do not demonstrate prejudice and some evidence supported the DHO's finding of guilt. Accordingly, habeas relief is not warranted on this ground.

5. Sanction

In his third claim for relief, Petitioner asserts that the BOP misapplied the DHO's sanction, arguing that the DHO's sanction only referred to a forfeit of forty-one days of non-vested good conduct time and does not refer to statutory good conduct time. (ECF No. 1 at 7–8.) However, the sanctions listed in the DHO report include both "DIS GCT 41 DAYS" and "FF NVGCT 41 DAYS." (App. 14.) Further, in his declaration, DHO Omar Gonzalez states that he "imposed the following sanctions for the Code 108 violation: Disallow 41 days Good Conduct Time (GCT) . . . Forfeit 41 days Non-vested Good Conduct Time (NVGCT) . . ." (App. 5.) Accordingly, the BOP did not misapply the sanction imposed by the DHO, and Petitioner is not entitled to habeas relief on this ground.

## III.

## RECOMMENDATION & ORDER

Accordingly, the Court HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss for nonexhaustion (ECF No. 10) be DENIED;

2. Petitioner's motion to reiterate jurisdiction (ECF No. 13) be GRANTED; and

3. The petition for writ of habeas corpus be DENIED.

Further, the Clerk of Court is DIRECTED to randomly assign this action to a District Judge.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v.

Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 23, 2024**

UNITED STATES MAGISTRATE JUDGE